**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YE ZHOU, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  v.<br><br>NEXTCURE, INC., MICHAEL RICHMAN, STEVEN P. COBOURN, KEVIN N. HELLER, M.D., DAVID KABAKOFF, PH.D., ELAINE V. JONES, PH.D., CHAU Q. KHUONG, JUDITH J. LI, BRIGGS MORRISON, M.D., TIM SHANNON, M.D., STEPHEN WEBSTER, STELLA XU, MORGAN STANLEY & CO. LLC, BOFA SECURITIES, INC., PIPER JAFFRAY & CO., NEEDHAM & COMPANY, LLC, and BTIG, LLC,<br><br>      Defendants. | Case No._____ |

## INTRODUCTION

1.      Plaintiff Ye Zhou ("Plaintiff") brings this class action for violations of the federal securities laws.

2.      Plaintiff brings this federal securities class action under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, on behalf of a class consisting of all persons and entities, other than Defendants (defined below) and their affiliates, who purchased NextCure, Inc. ("NextCure" or the "Company") securities between November 5, 2019 to July 14, 2020, inclusive (the "Class Period"), and who were damaged thereby (the "Exchange Act Class").  The Exchange Act claims are brought against Defendants NextCure, Michael Richman ("Richman"), Steven P. Cobourn ("Cobourn"), and Kevin N. Heller, M.D. ("Heller") (collectively, "Exchange Act Defendants").

3.      Plaintiff also brings this federal class action under §§11 and 15 of the Securities Act of 1933 ("Securities Act"), and rules promulgated thereunder, on behalf of all persons or entities that purchased or acquired NextCure common stock pursuant or traceable to the Company's Registration Statement on Form S-1 (the "Securities Act Class" and together, with the Exchange Act Class, the "Class"), which was filed with and declared effected by the SEC on November 12 and November 14, 2019, respectively (the "Registration Statement").  On November 18, 2019, the final Prospectus for the secondary public offering ("SPO"), which forms part of the Registration Statement, was filed with the SEC (together, the "Offering Documents").  Plaintiff brings these Securities Act claims against Defendants NextCure, Richman, Cobourn, the Director Defendants (defined below), and the Underwriter Defendants (defined below) (collectively, "Securities Act Defendants" and together, with the Exchange Act Defendants, "Defendants").

4.     Plaintiff makes the following allegations, individually and on behalf of all other similarly situated, by and through Plaintiff's counsel, upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief are based upon, *inter alia*, counsel's investigation, which included, among other things, review and analysis of: (i) regulatory filings made by NextCure with the SEC; (ii) press releases and media reports issued by and disseminated by the Company; and (iii) analyst reports, media reports, and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

5.     NextCure is a clinical-stage biopharmaceutical company that strives to discover and develop immune-oncology therapies.  Throughout the Class Period, Defendants misled investors regarding its leading treatment candidate, NC318, which was a first-in-class immunomedicine targeting a novel immunomodulatory receptor, called Siglec-15, or S15, particularly in patients with advanced or metastatic solid tumors.  Specifically, Defendants misled investors with respect to the efficacy of and objective responses observed in patients treated with NC318 from NextCure's Phase 1 Clinical Trial.

6.     Rather than reveal the truth, Defendants touted results that appeared positive early on November 5, 2019, causing the Company's stock to explode 250% higher, and before initiating a public offering on November 15, 2019, that generated nearly $150 million in gross proceeds from the investing public.

## JURISDICTION AND VENUE

7.     The Exchange Act claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

8.     The Securities Act claims asserted herein arise under and pursuant to §§11 and 15 of the Securities Act, 15 U.S.C. §§77k and 77o, and SEC rules promulgated thereunder.

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, §22 of the Securities Act, 15 U.S.C. §77v, and/or §27 of the Exchange Act, 15 U.S.C. §78aa.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b)-(c), §22 of the Securities Act, 15 U.S.C. §77v, and/or §27 of the Exchange Act, 15 U.S.C. §78aa, because the acts and transactions giving rise to the violations of law complained of occurred, in part, in this District, including the dissemination of false and misleading statements into this District, certain Defendants reside and/or transact business in this District, and the Company maintains its corporate headquarters in this District.  In addition, NextCure's stock trades on the NASDAQ, which is located in this District.

11.     In connection with the acts and conduct alleged in this complaint, Defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

## THE PARTIES

**A.     Plaintiff**

12.     Plaintiff Ye Zhou purchased NextCure common stock during the Class Period, as described in the Certification attached hereto and incorporated herein by reference, and suffered damages as a result of the violations of the federal securities laws alleged herein.  In addition,

Plaintiff Zhou has been assigned the claims of her husband, Sucai Bi ("Bi").  Mr. Bi's relevant trades are reflected in the Schedule A to Plaintiff Zhou's Certification.  Plaintiff suffered economic losses when true facts about the Company's business, financial condition, and operations were disclosed and the artificial inflation was removed from the price of NextCure's stock.

**B.     Defendants**

**1.     The Company**

13.     Defendant NextCure is a clinical-stage biopharmaceutical company incorporated under the law of the state of Delaware and maintains its headquarters at 9000 Virginia Manor Road, Suite 200, Beltsville, Maryland 20705.   NextCure's common stock is listed on the NASDAQ, which is an efficient market located in New York, New York, under the ticker symbol "NXTC."

**2.     The Individual and Director Defendants**

14.     Defendant Michael Richman was, throughout the Class Period and at all relevant times, President and Chief Executive Officer ("CEO") of NextCure.   Defendant Richman also served as a director on the Company's Board of Directors (the "Board").   Defendant Richman reviewed, approved, and participated in making statements in the Registration Statement, which he signed.  He also reviewed, edited, and approved the SPO's road show PowerPoint presentation, road show talking points and script, and participated in making the materially inaccurate misleading and incomplete statements alleged herein as NextCure's CEO.

15.     Defendant Steven P. Cobourn was, throughout the Class Period and at all relevant times, Chief Financial Officer ("CFO") of NextCure.   Defendant Cobourn reviewed, approved, and participated in making statements in the Registration Statement, which he signed.   He also reviewed, edited, and approved the SPO's road show PowerPoint presentation, road show talking

points and script, and participated in making the materially inaccurate misleading and incomplete statements alleged herein as NextCure's CFO.

16.     Defendant Kevin N. Heller, M.D. ("Heller") was, throughout the Class Period and at all relevant times until his resignation on July 13, 2020 (effective August 4, 2020), Chief Medical Officer of NextCure.

17.     Defendants Richman, Cobourn, and Heller are collectively referred to herein as the "Individual Defendants."  During the Class Period, the Individual Defendants ran the Company as hands-on executives and/or managers, overseeing NextCure's operations, finances, and business. The Individual Defendants made the materially false and misleading statements described herein and each had intimate knowledge about core aspects of NextCure's financial and business operations.  The Individual Defendants were also intimately involved in deciding which disclosures would be made by NextCure.  Because of their positions and access to material non-public information available to them during the Class Period, the Individual Defendants knew that the adverse facts specified herein had not been disclose to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants, because of their positions at NextCure, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, presentations to securities analysts, money and portfolio managers, institutional and individual investors, and industry experts and/or practitioners at conferences and other events.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.

18.     At the time of the SPO, Defendant David Kabakoff, Ph.D. ("Kabakoff") was serving as Chairman of the NextCure Board.  Defendant Kabakoff participated in the preparation of and signed, or authorized the signing of, the Registration Statement.

19.     At the time of the SPO, Defendant Elaine V. Jones, Ph.D. ("Jones") was serving as a director on the NextCure Board.  Defendant Jones participated in the preparation of and signed, or authorized the signing of, the Registration Statement.

20.     At the time of the SPO, Defendant Chau Q. Khuong ("Khuong") was serving as a director on the NextCure Board.  Defendant Khuong participated in the preparation of and signed, or authorized the signing of, the Registration Statement.

21.     At the time of the SPO, Defendant Judith J. Li ("Li") was serving as a director on the NextCure Board.  Defendant Li participated in the preparation of and signed, or authorized the signing of, the Registration Statement.

22.     At the time of the SPO, Defendant Briggs Morrison, M.D. ("Morrison") was serving as a director on the NextCure.  Defendant Morrison participated in the preparation of and signed, or authorized the signing of, the Registration Statement.

23.     At the time of the SPO, Defendant Tim Shannon, M.D. ("Shannon") was serving as a director on the NextCure Board.  Defendant Shannon participated in the preparation of and signed, or authorized the signing of, the Registration Statement.

24.     At the time of the SPO, Defendant Stephen Webster ("Webster") was serving as a director on the NextCure Board.  Defendant Webster participated in the preparation of and signed, or authorized the signing of, the Registration Statement.

25.     At the time of the SPO, Defendant Stella Xu ("Xu") was serving as a director on the NextCure Board.  Defendant Xu participated in the preparation of and signed, or authorized the signing of, the Registration Statement.

26.     Defendants Richman, Cobourn, Kabakoff, Jones, Khuong, Li, Morrison, Shannon, Webster, and Xu are collectively referred to herein as the "Director Defendants."

### 3.     The Underwriter Defendants

27.     The Underwriter Defendants were also instrumental in soliciting investors and in making the NextCure shares that were offered and sold in or traceable to the SPO available to the members of the Securities Act Class.  The table below lists each of the Underwriter Defendants, together with the number of allotted shares that each sold to the Securities Act Class members in the SPO:

| Name | Number of Shares |
|---|---|
| Morgan Stanley & Co. LLC | 1,549,332 |
| BofA Securities, Inc. | 1,386,245 |
| Piper Jaffray & Co. | 733,895 |
| Needham & Company, LLC | 203,860 |
| BTIG, LLC | 203,860 |

28.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter of the Company's SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Morgan Stanley acted as a representative of all the underwriters.  Morgan Stanley also participated in conducting and promoting the roadshow for the SPO and paying for the expenses of the Director Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Morgan Stanley's participation in and its solicitation of offers in

connection with the SPO was motivated by its financial interests.  Defendant Morgan Stanley conducts business in the state of Maryland.

29.     Defendant BofA Securities, Inc. ("BofA") was an underwriter of the Company's SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  BofA acted as a representative of all the underwriters.  BofA also participated in conducting and promoting the roadshow for the SPO and paying for the expenses of the Director Defendants who participated in the roadshow, including lodging and travel, among other expenses.  BofA's participation in and its solicitation of offers in connection with the SPO was motivated by its financial interests.  Defendant BofA conducts business in the state of Maryland.

30.     Defendant Piper Jaffray & Co. ("Piper Jaffray") was an underwriter of the Company's SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Piper Jaffray acted as a representative of all the underwriters.  Piper Jaffray also participated in conducting and promoting the roadshow for the SPO and paying for the expenses of the Director Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Piper Jaffray's participation in and its solicitation of offers in connection with the SPO was motivated by its financial interests.  Defendant Piper Jaffray conducts business in the state of Maryland.

31.     Defendant Needham & Company, LLC ("Needham") was an underwriter of the Company's SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.  Needham participated in conducting and promoting the roadshow for the SPO and

paying for the expenses of the Director Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Needham's participation in and its solicitation of offers in connection with the SPO was motivated by its financial interests.  Defendant Needham conducts business in the state of Maryland.

32.     Defendant BTIG, LLC ("BTIG") was an underwriter of the Company's SPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's material inaccurate, misleading, and incomplete Offering Documents.   BTIG participated in conducting and promoting the roadshow for the SPO and paying for the expenses of the Director Defendants who participated in the roadshow, including lodging and travel, among other expenses.  BTIG's participation in and its solicitation of offers in connection with the SPO was motivated by its financial interests.  Defendant BTIG conducts business in the state of Maryland.

33.     Defendants listed in ¶¶27-32 are collectively referred to herein as the "Underwriter Defendants."

34.     Pursuant to the Securities Act, each Underwriter Defendant is liable for the materially inaccurate, misleading, and incomplete statements in the Offering Documents.   In addition, although not an element of Plaintiff's claims and an issue on which each Underwriter Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense, no Underwriter Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence" affirmative defense under the Securities Act.  Each Underwriter Defendant committed acts and omissions that were a substantial factor leading to the harm complained of herein.

35.   Each Underwriter Defendant named herein is an investment banking firm whose activities include, *inter alia*, the underwriting of public offerings of securities.  As the underwriters of the IPO, the Underwriter Defendants earned lucrative underwriting fees.

36.   As underwriters, the Underwriter Defendants met with potential investors in the SPO and presented highly favorable, but materially incorrect and/or materially misleading, information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

37.   Representatives of the Underwriter Defendants also assisted NextCure and the Director Defendants in planning the SPO.  They further purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, financial condition, products, plans, and prospects.

38.   In addition to having access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to NextCure's management, directors, and lawyers to determine: (i) the strategy to best accomplish the SPO; (ii) the terms of the SPO, including the price at which NextCure's common stock would be sold; (iii) the language to be used in the Offering Documents; (iv) what disclosures about NextCure would be made in the Offering Documents; and (v) what responses would be made to the SEC in connection with its review of the Offering Documents.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and NextCure's management, directors, and lawyers, at a minimum, the Underwriter Defendants should have known of NextCure's

undisclosed then-existing problems and plans and the Offering Documents' materially inaccurate, misleading, and incomplete statements and omissions, as detailed herein.

39.     The Underwriter Defendants also demanded and obtained an agreement from NextCure under which NextCure agreed to indemnify and hold the Underwriter Defendants harmless from any liability under the Securities Act.

40.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the SPO, so that they, and the Director Defendants, could offer to sell, and sell, NextCure shares to Plaintiff and the members of the Securities Act Class pursuant (or traceable) to the Offering Documents.

## SUBSTANTIVE ALLEGATIONS

### A.     Background

41.     NextCure is a clinical-stage biopharmaceutical company striving to discover and develop novel, first-in-class immunomedicine to treat cancer and other immune-related diseases by restoring normal immune function.  Through its proprietary Functional, Integrated, NextCure Discovery in Immuno-Oncology ("FIND-IO") platform, NextCure studies various immune cells to discover and understand targets and structural components of immune cells and their functional impact in order to develop immunomedicines.  In particular, NextCure focuses on patients who do not respond to current therapies, patients whose cancer progresses despite treatment, and patients with cancer types not adequately addressed by available therapies.

42.     NC318 was NextCure's principal product candidate.  NC318 was said to be a first-in-class immunomedicine targeting a novel immunomodulatory receptor called Siglec-15, or S15, which NextCure's scientific founder, Lieping Chen ("Chen"), had discovered in 2015 at Yale University.

43.     The combination of NC318's unique ability to modulate immune responses, and S15's existence in multiple tumor types, led Defendants to tout NC318's potential to treat multiple cancer indications, including patients who were not responding to current cancer therapies.[1] Initially, NC318 was to be evaluated in patients suffering from advanced or metastatic solid tumors, including ovarian cancer, non-small cell lung cancer ("NSCLC"), head and neck squamous cell carcinoma ("HNSCC"), and triple-negative breast cancer ("TNBC").

44.     At the time of the Company's initial public offering in May 2019, NextCure's first in-human trial was well-underway.  It consisted of an open-label, Phase 1/2 clinical trial and was designed to assess the safety and tolerability of NC318, define the maximal tolerable dose or pharmacologically active dose, and assess preliminary efficacy.  NextCure expected to complete the Phase 1 portion of the trial in the fourth quarter of 2019 and Phase 2 portion in the fourth quarter of 2020.

45.     According to the prospectus accompanying NextCure's initial public offering, as of March 31, 2019, NextCure dosed 21 patients in the Phase 1 portion of the trial across four dose cohorts and, importantly, NC318 "had been well tolerated, with no drug-related severe adverse events or dose limiting toxicities observed."  Indeed, at the time, NextCure witnessed "one confirmed partial response" and "six instances of stable disease in 13 patients who have had at least one on-treatment radiologic assessment as of March 31, 2019."

---

[1]     Chen was also the first to discover a molecule he called B7-H1, which is now more widely known as PD-L1, or programmed cell death protein ligand 1, which is the ligand for PD-1, or programmed cell death 1.  According to the Company, because S15 and PD-L1 expression in tumors generally appear to be non-overlapping, NC318 may be well suited to treat patients who are not responding to PD-1/PD-L1 directed cancer therapies.

**B.     Defendants' False and Misleading Statements and Omissions**

46.    On November 5, 2019, following the market's open, and in anticipation of presenting full Phase 1 clinical trial results at the 34th Annual Meeting of Society for Immunotherapy of Cancer ("SITC") in Maryland days later, NextCure published an abstract on the SITC Annual Meeting website announcing, as of August 2019, that 43 patients had been dosed with NC318 across six dose cohorts, that "NC318 ha[d] been well tolerated with no DLTs," and that tumor responses were evaluable in 32 patients with single agent activity seen in NSCLC patients, in particular, including one who achieved complete remission (a/k/a "a complete response"), another who experienced tumor shrinkage (a/k/a "a partial response"), and three others whose tumors had not worsened.  In all, NextCure reported a disease control rate of 71% while committing to present results for all 43 patients during the SITC Annual Meeting days later.

47.    In addition, NextCure affirmed that the expression of S15 and PD-L1 are mutually exclusive in NSCLC and certain other cancers, underscoring the rationale of S15-targeting therapy in patients who do not respond adequately to PD-1 inhibitors.  As a result, according to media and analysts alike, "expectations for NextCure and NC318 [ ] soar[ed] because S15-positive tumors tend to be PD-L1-negative, and NC318 could become as popular as [Merck's blockbuster drug] Keytruda if clinical trial results continue to impress."

48.    On this news, NextCure's stock exploded, closing on November 5, 2019, at $92.22 per share, up nearly 250% from the previous day's close.

49.    On November 9, 2019, during its webcasted presentation at the SITC Annual Meeting, and in a press release published by the Company that same day, NextCure presented "Updated Clinical Data from NC318 Phase 1/2 Clinical Trial," highlighting in particular that "NC318 was well tolerated" and that the Company witnessed a complete response and a partial response to the treatment in patients from the NSCLC cohort, notwithstanding also claiming that

13

"single agent activity [was] observed in multiple tumor types." Indeed, the Company focused
heavily on the purported positive results witnessed in patients with NSCLC, nearly exclusively,
stating, in relevant part:

> As of November 9, 2019, 49 patients had been dosed across seven dose cohorts
> between 8 mg and 1,600 mg, administered every two weeks:
>
> - ***The most common tumor types enrolled included: non-small cell lung cancer
>   (NSCLC) (13 patients)***, ovarian cancer (seven patients), melanoma (seven
>   patients), breast cancer (four patients) and colorectal cancer (three patients).
>
> \* \* \*
>
> - ***All 13 NSCLC patients were PD-1 refractory***, with a median of four prior
>   therapies.
>
> - ***Data show that NC318 was well tolerated***, and the only dose-limiting toxicity
>   was a grade 3 pneumonitis in the 1,600 mg cohort.
>
> \* \* \*
>
> - ***Data from the trial indicate activity in multiple tumor types including
>   durable stable disease in patients with NSCLC***, endometrial cell cancer,
>   ovarian cancer, squamous cell carcinoma, Merkel cell cancer and head and
>   neck cancer (ongoing for 16 to 55 weeks as of November 9, 2019).
>
> - ***Durable responses were observed in patients who received NC318, including
>   one complete response (ongoing at 55 weeks), one partial response (ongoing
>   at 28 weeks) and four stable diseases in NSCLC (ongoing for 16 to 40 weeks)***
>   and 14 stable diseases overall (ongoing for 16 to 42 weeks).
>
> - ***15 patients remain on study in the Phase 1 portion of the trial, including
>   seven patients with NSCLC***.

[Emphasis added.]

50.     Defendant Heller, NextCure's Chief Medical Officer, stressed the results witnessed
in the NSCLC cohort, stating, in relevant part: "It is encouraging to see single-agent activity among
***NSCLC*** patients refractory to PD-1 therapies, ***including a durable complete response and a
durable partial response***." [Emphasis added.] He also implied that NC318 could become as
popular as Merck's Keytruda, juxtaposing the above with "[g]iven what appears to be the non-

overlapping expression of PD-L1 [*i.e.*, Keytruda] and S15, the ***results to date support the potential of NC318 to block S15-mediated immune suppression among a patient population unlikely to respond to PD-1/PD-L1-directed therapies.***"  [Emphasis added.]

51.    Defendant Richman likewise hyped NC318's potential, stating:

There is a real need for new treatment options for patients who do not respond to current therapies. The tolerability and initial anti-tumor activity with NC318 ***reinforces our belief that NC318 has the potential to be a new therapy for patients with solid tumors and low levels of PD-L1 expression or who do not respond to current anti-PD-1/PD-L1 treatments***.

[Emphasis added.]

52.    Days later, on November 12, 2019, NextCure filed a draft Registration Statement on Form S-1 with the SEC, which would later be utilized for the SPO following amendment.  On November 14, 2019, the SEC declared the Registration Statement effective.   On or about November 14, 2019, NextCure, the Director Defendants, and the Underwriter Defendants priced the SPO, and on November 18, 2019, NextCure filed the final Prospectus for the SPO, which forms part of the Registration Statement.

53.    Through its SPO, NextCure offered 4,077,192 shares (or up to 4,688,770 shares if the Underwriter Defendants exercised their option to purchase additional shares in full) at an offering price of $36.75 per share for anticipated gross proceeds between $149.8 and $173 million. The SPO closed on November 19, 2019.  The Company raised $172.2 million in gross proceeds.

54.    The Offering Documents used to amass this sum from the investing public profiled the Company's principal drug candidate NC318 and its purported potential to treat multiple cancer indications.  For example, the Offering Documents stated:

NC318, our lead immunomedicine program, is a monoclonal antibody targeting S15, which is expressed on highly immunosuppressive cells called M2 macrophages and on tumor cells. The immunosuppressive properties of S15 were discovered in 2015 at Yale University by Dr. Chen. Dr. Chen was also the first to discover a molecule he called B7-H1, which is now more widely known as PD-L1,

or programmed cell death protein ligand 1, which is the ligand for PD-1, or programmed cell death 1. In preclinical research, we and others observed that S15 promotes suppression of T cell proliferation and negatively regulates T cell function. NC318 is designed to block this S15-mediated immune suppression and restore T cell function and anti-tumor immunity in the TME, which we believe will reduce and kill tumors. *We believe NC318 has the potential to treat multiple cancer indications because S15 is expressed in multiple tumor types and has a unique ability to modulate immune responses in the TME. In addition, because S15 and PD-L1 expression in tumors generally appear to be non-overlapping, we believe NC318 may be well suited to treat patients who are not responding to PD-1/PD-L1 directed cancer therapies*.

In preclinical studies, we evaluated the safety and efficacy of 5G12, the murine parent antibody of NC318, which has similar overall functional properties to NC318, and *observed that blocking the effects of S15 with 5G12 restored immune function and anti-tumor immunity, reduced tumor growth and increased survival*.

[Emphasis added.]

55.    The Offering Documents also touted the purported positive results of the

Company's Phase 1 trial, which evaluated NC318 for the treatment of advanced or metastatic solid

tumors, including NSCLC, ovarian cancer, HNSCC, and TNBC, making the following statements:

We completed enrollment of the Phase 1 portion of the trial in August 2019 and have *dosed 49 patients* across seven dose cohorts between 8 mg and 1,600 mg. The most common tumors in the trial were NSCLC (13 patients), ovarian (seven patients), melanoma (seven patients), breast (four patients) and colorectal (three patients). Enrolled patients had all been subject to previous cancer treatments, with a median of three prior therapies, and all 13 NSCLC patients were PD-1 refractory and had been treated with a median of four prior therapies.

Preliminary data from the Phase 1 portion was presented in November 2019 at the SITC annual meeting. *As of September 26, 2019, the cutoff date of the data discussed by the NC318 trial investigator at the SITC annual meeting, tumor responses were evaluable in 45 patients, and four patients had not yet been assessed.* Treatment-related adverse events experienced by more than 5% of patients as of that date were diarrhea (16%), infusion reactions (8%), fatigue (6%), headaches (6%), pruritis (6%), elevated amylase (8%) and elevated lipase (6%).

*As of November 9, 2019, NC318 has been well tolerated in the Phase 1 portion of the trial* and only one dose-limiting toxicity, a grade 3 pneumonitis at the highest dose level, was observed. Treatment-related adverse events experienced by more than 5% of patients as of that date continued to be diarrhea, infusion reactions, fatigue, headaches, pruritis, elevated amylase and elevated lipase. Most treatment-

related adverse events have been easily manageable, asymptomatic or mild or moderate, with the exception of one case of grade 3 episcleritis/uveitis at the 400 mg dose level that resolved after steroid therapy and two cases of grade 3 pneumonitis (one at the 400 mg dose level and one at the 1,600 mg dose level). ***Data from the trial indicate activity in multiple tumor types, including durable stable disease in patients with NSCLC, endometrial cell cancer, ovarian cancer, squamous cell carcinoma, Merkel cell cancer and head and neck cancer. As of November 9, 2019, durable responses observed include one complete response, which remains ongoing at 55 weeks, and one partial response, which remains ongoing at 28 weeks, both in NSCLC patients, as well as 14 patients with stable disease, which remain ongoing for between 16 and 42 weeks. Among those 14 patients, four patients have NSCLC, with stable disease ongoing for between 16 and 40 weeks***. Three NSCLC patients (out of 13 NSCLC patients in total) have not been in the study long enough to confirm the status of their disease.

[Emphasis added.]

56.     The statements made by Defendants in ¶¶46-47, 49-51, 54-55 above, concerning the effectiveness of NC318, the responses observed in patients treated with NC318, and NC318's potential to treat patients' refractory to PD-1 therapies, were materially misleading when made. While Defendants are free to tout positive information about NC318, under the federal securities laws, they are bound to do so in a manner that will not mislead investors.  This responsibility includes disclosing any additional adverse information that cuts against the voluntarily revealed, positive information presented.  Here, Defendants' statements were materially misleading because the NC318 data Defendants possessed showed a lack of efficacy and objective responses.  Had the truth been revealed, the market would have seen that NC318 was not, in fact, effective in treating most tumor types, that the NC318 application was proving to be limited (if even useful at all), and, as a result, there was a significant realizable risk that NC318 would not be nearly as popular as then-existing blockbuster drugs, such as Keytruda.

57.     In addition, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303 ("Item 303"), imposed an independent duty on Defendants to disclose in the Offering Documents any known events, trends, or uncertainties that NextCure, as of the SPO, "reasonably expect[ed] will have a

material favorable or unfavorable impact on the sales or revenues or income from continuing operations." The Offering Documents violated Item 303 by failing to disclose that, as of the SPO, the NC318 data Defendants possessed showed a lack of efficacy and objective responses.

58. Likewise, Item 503 of SEC Regulation S-K, 17 C.F.R. §229.503(c) ("Item 503"), imposed an independent duty on Defendants to provide, among other things, a "discussion of the most significant factors that make the offering speculative or risky." Here, one of the most significant factors that made the Offering speculative or risky to investors was the fact that, at the time of the SPO, the NC318 data Defendants possessed showed a lack of efficacy and objective responses. Nowhere in the Offering Materials did NextCure disclose to investors that, as of the date of the SPO, this material known trend was occurring, resulting in a host of current and future financial problems. Accordingly, disclosure of these material facts were required under Item 503.

## C. The Truth Begins to Emerge

59. NextCure had been developing NC318 using proceeds from a 2018 research and development collaboration agreement with Eli Lilly and Company ("Eli Lilly"). On January 13, 2020, in a current report filed on Form 8-K with the SEC, NextCure quietly announced that Eli Lilly had ended its deal with the Company. Following this news, NextCure's stock plunged, falling $4.70 per share, or approximately 8.29%, to close at $52.00 per share on January 13, 2020.

60. Then, pre-market on July 13, 2020, NextCure made a shocking admission. Specifically, in a press release entitled, "NextCure provides an Interim update of the Phase 2 Portion of the NC318 Monotherapy Phase 1/2 Trial and Announces Departure Chief Medical Officer," NextCure announced that the Company was no longer planning to "advance the non-small cell lung cancer (NSCLC) and ovarian cancer cohorts in the stage 2 portion of the Simon 2-stage trial," citing "clinical response data" and "current enrollment criteria." The July 13, 2020 announcement continued, stating, in relevant part, "The analysis of biomarker data for these

cohorts has been delayed and is not yet complete. The company will evaluate whether to pursue additional monotherapy studies in NSCLC and ovarian cancer after a review of that information." NextCure also announced that Defendant Heller was resigning to pursue a new opportunity.

61.     Analysts immediately slashed price targets and conveyed concerns.  For example, Piper Sandler decreased their price target to $32 from $87.  Roth Capital downgraded its rating to neutral from buy, setting a price target of just $15.  And, SunTrust, which had previously lauded the Company and NC318's application in the NSCLC patient population, cut its rating to hold, while reducing its price target to $13 from $78, before bluntly stating how "the probabilities of [NextCure's] efforts developing lead program NC318 monotherapy in NSCLC & ovarian cancer [are now] *0%*."  [Emphasis added.]

62.     Benchmark offered yet another view, connecting the two events revealed in the Company's July 13, 2020 press release:

> We think the two events are connected. NSCLC was the only indication that previously showed clinical responses, and our main investment thesis was around the large PD-L1-refactory NSCLC patient population. Indeed, we suspect there might have been certain disagreements between the CMO [Defendant Heller] and [ ] management in terms of the clinical trial strategy for NC318.

Similarly, JMP, which lowered its rating to market perform, set a price target of $55 and stated, "The company's decision to stop enrolling in the NSCLC and ovarian cohorts was based on Simon's two-stage design of the trial and the *lack of any objective responses at the end of 'stage one*.'"  [Emphasis added.]

63.     On this news, NextCure's shares, which had closed at $17.88 per share on July 10, 2020, dropped over 54% the next trading day to close at $8.15 per share on July 13, 2020, on unusually high trading volume.  This decrease in the price of NextCure's securities was a result of the artificial inflation caused by Defendants' misleading statements coming out of the price.



**CLASS ACTION ALLEGATIONS**

64.     Plaintiff brings this action as a class action, pursuant to Rules 23(a) and 23(b)(3), of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, the common stock of NextCure between November 5, 2019 and July 14, 2020, both dates inclusive (the "Class Period"), including in, pursuant to, and/or traceable to the SPO (the "Class").

65.     Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of NextCure, members of the NextCure Board, and members of their immediate families (as defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of NextCure.

66.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, the Company's common stock was actively traded on the NASDAQ, a national securities exchange.  While the exact number of Class members is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the Class.  Millions of

NextCure shares were publicly traded during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by NextCure or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

67.     Plaintiff's claims are typical of the claims of Class members, who were all similarly affected by Defendants' wrongful conduct in violation of the federal securities laws. Further, Plaintiff will fairly and adequately protect the interests of Class members and have retained counsel competent and experienced in class and securities litigation.

68.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the members of the Class are:

(a)     whether Defendants violated the Exchange Act;

(b)     whether Defendants violated the Securities Act;

(c)     whether Defendants' statements to the investing public during the Class Period omitted and/or misrepresented material facts;

(d)     whether Defendants' statements to the investing public during the Class Period omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(e)     whether Defendants knew or recklessly disregarded that their statements were false and misleading;

(f)     whether the price of NextCure common stock was artificially inflated; and

(g)      the extent of damage sustained by Class members and the appropriate measure of damages.

69.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Further, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for Class members to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

### COUNT I

**For Violations of §10(b) of the Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**(Against Defendant NextCure and the Individual Defendants)**

70.      Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

71.      This Count is asserted on behalf of all members of the Class against NextCure and the Individual Defendants for violations of §10(b) of the Exchange Act, 15 U.S.C. §78(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

72.      These Defendants carried out a plan, scheme, and course of conduct which was intended to, and did: (i) deceive the investing public, including Plaintiff and the other Class members, as alleged herein; and (ii) caused Plaintiff and the other members of the Class to purchase NextCure securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, each of these Defendants took the actions set forth herein.

73.      During the Class Period, these Defendants disseminated or approved the false statements specified herein, among others, which they knew, or deliberately disregarded, were materially misleading in that they contained material misrepresentations and failed to disclose

material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

74.    These Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for NextCure securities in violation of §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

75.    These Defendants, individually and in concert, directly and indirectly, by the use and means of instrumentalities or interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and future prospects of NextCure, as specified herein.

76.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material, adverse nonpublic information and engaged in acts, practices, and a course of conduct, as alleged herein, in an effort to assure investors of NextCure's value and performance and continued substantial growth, which included the making of, or participation in the making of, false statements of material facts and omitting to state material facts necessary in order to make the statements made about NextCure and its business operations and future prospects, in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business that operated as a fraud and deceit upon the purchasers of NextCure securities.

77.    As described above, these Defendants acted with scienter throughout the Class Period in that they either had actual knowledge of the misrepresentations and omissions of material

facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. These Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and, for the purpose and effect of concealing the Company's results and growth prospects, thereby artificially inflating the price of its securities. As demonstrated by these Defendants' omissions and misstatements of the Company's business strategy, these Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

78.   As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of NextCure securities was artificially inflated. In ignorance of the fact that market prices of NextCure's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by these Defendants, or upon the integrity of the market in which the securities trade, and/or in the absence of material adverse information that was known to, or recklessly disregarded by, these Defendants, but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class acquired NextCure securities at artificially high prices and were, or will be, damaged thereby.

79.   At the time of said misrepresentations and omissions, Plaintiff and the other members of the Class were ignorant of their falsity and believed them to be true. Had Plaintiff, the other members of the Class, and the marketplace known the truth regarding the Company's business, which was not disclosed by Defendants, Plaintiff and the other members of the Class would not have purchased, or otherwise acquired, their NextCure, securities, or if they had

acquired such securities, they would not have done so at the artificially inflated prices that they paid.

80.     By virtue of the foregoing, these Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

81.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities.

82.     This action was filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

## COUNT II
### For Violations of §20(a) of the Exchange Act
### (Against the Individual Defendants)

83.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

84.     The Individual Defendants acted as controlling persons of NextCure within the meaning of §20(a) of the Exchange Act, 15 U.S.C. §78t(a), as alleged herein.  By virtue of their high-level positions, agency, ownership, and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.  The Individual Defendants were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to have been

misleading prior to, and/or shortly after, these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

85.    In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations, as alleged herein, and exercised the same.

86.    As set forth above, NextCure and the Individual Defendants each violated §10(b) and Rule 10b-5 promulgated thereunder by their acts and omissions, as alleged in this complaint.

87.    By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act.   As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class have suffered damages in connection with their purchases of the Company's securities.

88.    This action as filed within two years of discovery of the fraud and within five years of Plaintiff's purchase of securities giving rise to the cause of action.

### COUNT III

**For Violations of §11 of the Securities Act**
**(Against Defendant NextCure, the Director Defendants, and**
**the Underwriter Defendants)**

89.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

90.    This claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Securities Act Defendants.   This is a non-fraud cause of action. Plaintiff does not assert that Defendants committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

91.    The Offering Documents were inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

92.    The Company is the registrant of the securities purchased by Plaintiff and the Class. As such, the Company is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate.  By virtue of the Offering Documents containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, NextCure is liable under §11 of the Securities Act to Plaintiff and the Class.

93.    The Director Defendants each signed the Offering Documents and caused its issuance.  As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Director Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents and ensure that they were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Director Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  Accordingly, the Director Defendants are liable to Plaintiff and the Class.

94.    The Underwriter Defendants each served as underwriters in connection with the SPO.  As such, each is strictly liable for the materially inaccurate statements contained in the

Offering Documents and the failure of the Offering Documents to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. The Underwriter Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents. They had a duty to ensure that such statements were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein. In the exercise of reasonable care, the Underwriter Defendants should have known of the material misstatements and omissions contained in the Offering Documents and also should have known of the omissions of material facts necessary to make the statements made therein not misleading. Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

95.     Defendants acted negligently in preparing the Offering Documents. None of the Defendants named in this Claim made a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omission of any material facts and were not misleading. In alleging the foregoing, Plaintiff specifically disclaims any allegation of fraud.

96.     By reasons of the conduct herein alleged, each Defendant named in this claim violated §11 of the Securities Act.

97.     None of the untrue statements or omissions of material fact in the Offering Documents alleged herein was a forward-looking statement. Rather, each such statement concerned existing facts. Moreover, the Offering Documents did not properly identify any of the untrue statements as forward-looking statements and did not disclose information that undermined the putative validity of these statements.

98.     Plaintiff acquired the Company's securities pursuant or traceable to the Offering Documents and without knowledge of the untruths and/or omissions alleged herein.  Plaintiff sustained damages, and the price of the Company's shares declined substantially due to material misstatements in the Offering Documents.

99.     This claim is brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

100.     By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally

## COUNT IV

### For Violations of §15 of the Securities Act
### (Against the Director Defendants)

101.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

102.     This claim is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against each of the Director Defendants.

103.     The Director Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invested in, individually and collectively, and had the power to influence, and exercised same over, the Company to cause it to engage in the conduct complained of herein.  Similarly, each of the other Director Defendants not only controlled those subject to liability as primary violators of §11 of the Securities Act, as alleged above, they directly participated in controlling NextCure by having

signed, or authorized the signing of, the Registration Statement and authorizing the issuance of NextCure securities to Plaintiff and members of the Class.

104.    As control persons of NextCure, each of the Director Defendants are jointly and severally liable pursuant to §15 of the Securities Act with and to the same extent as NextCure for its violations of §11 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Exchange Act and Securities Act Classes, prays for relief and judgement as follows:

A.    Declaring that this action is a proper class action, pursuant to Fed. R. Civ. P. 23, certifying Plaintiff as a representative of the Exchange Act and Securities Act Classes, and designating Plaintiff's counsel as Class Counsel for both the Exchange Act and Securities Act Classes;

B.    Awarding compensatory damages in favor of Plaintiff and the other members of the Exchange Act Class against all Exchange Act Defendants, jointly and severally, for all damages sustained, as a result of the Exchange Act Defendants' wrongdoing, in an amount to be proved at trial, including interest thereon;

C.    Awarding Plaintiff and the Exchange Act and Securities Act Classes their reasonable costs and expenses incurred in this action, including attorneys' and expert fees;

D.    Awarding rescission or a rescissionary measure of damages; and

E.    Such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  September 21, 2020

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

 */s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV
Jonathan M. Zimmerman (*pro hac vice forthcoming*)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile:  (212) 223-6334
tlaughlin@scott-scott.com
jzimmerman@scott-scott.com

*Attorneys for Plaintiff Ye Zhou*