**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YE ZHOU, Individually and On Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br>NEXTCURE, INC., MICHAEL RICHMAN, STEVEN P. COBOURN, KEVIN N. HELLER, M.D., DAVID KABAKOFF, PH.D., ELAINE V. JONES, PH.D., CHAU Q. KHUONG, JUDITH J. LI, BRIGGS MORRISON, M.D., TIM SHANNON, M.D., STEPHEN WEBSTER, STELLA XU, MORGAN STANLEY & CO. LLC, BOFA SECURITIES, INC., PIPER JAFFRAY & CO., NEEDHAM & COMPANY, LLC, and BTIG, LLC,<br><br>  Defendants. | Case No. 20-cv-07772 (LTS) (RWL) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

      A.     NextCure, the NC318 Clinical Trial, and the FIND-IO Platform ........................... 3

      B.     NextCure's Initial Public Offering ........................................................................ 4

      C.     NextCure Presents Preliminary Phase 1 Results from the NC318 Trial ................. 5

      D.     NextCure's Secondary Public Offering ................................................................. 6

      E.     The 2020 Statements ............................................................................................ 6

      F.     NextCure Presents Updated Clinical Trial Data ................................................... 7

ARGUMENT ....................................................................................................................... 7

I.     PLAINTIFF MUST COMPLY WITH A HEIGHTENED PLEADING STANDARD .................................................................................................................. 7

II.    PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT UNDER THE SECURITIES ACT OR THE EXCHANGE ACT ................................... 9

      A.     Plaintiff Fails to State a Claim Based on the November 5, 2019 Abstract ............. 9

      B.     Plaintiff Fails to State a Claim Based on the Supplemental Results ..................... 13

           1.     The Statements Are Puffery ...................................................................... 13

           2.     NextCure Disclosed its Phase 1 Trial Parameters ..................................... 14

           3.     Many of the Alleged Misstatements Are Manufactured for Litigation or Misattributed to Defendants ................................................ 16

      C.     Plaintiff Fails to State a Claim Based on Defendants' FIND-IO Disclosures ...... 18

III.   PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ................ 20

      A.     Plaintiff Fails to Plead Motive ............................................................................ 21

      B.     Plaintiff Fails to Plead That Defendants Did Not Reasonably Believe their Statements ......................................................................................................... 21

           1.     Plaintiff Fails to Plead Scienter Regarding the Phase 1 Trial Results ....... 22

           2.     Plaintiff Fails to Plead Scienter Regarding FIND-IO ............................... 24

IV.   PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED ............................. 24

V.    CONSIDERATION OF THE ARTAKI EXHIBITS IS PROPER ................................... 24

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*,
561 F. App'x 598 (9th Cir. 2014) ...................................................................................12

*Avon Pension Fund v. GlaxoSmithKline PLC*,
343 F. App'x 671 (2d Cir. 2009) ....................................................................................22

*Barilli v. Sky Solar Holdings, Ltd.*,
389 F. Supp. 3d 232 (S.D.N.Y. 2019)........................................................................14, 25

*Born v. Quad/Graphics, Inc.*,
No. 19-cv-10376 (VEC), 2021 WL 736839 (S.D.N.Y. Feb. 25, 2021)..................................25

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*,
632 F.3d 751 (1st Cir. 2011)..........................................................................................22

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)......................................................................................19, 22

*Dempsey v. Vieau*,
130 F. Supp. 3d 809 (S.D.N.Y. 2015).................................................................................21

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).......................................................................................................13

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)......................................................................................20, 21

*Fernandez v. Zoni Language Centers, Inc.*,
No. 15-cv-6066 (PKC), 2016 WL 2903274.........................................................................25

*Fort Worth Emp'rs Ret. Fund v. Biovail Corp.*,
615 F. Supp. 2d 218 (S.D.N.Y. 2009)................................................................................22

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016).................................................................................23

*Gregory v. ProNAi Therapeutics Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y. 2018).................................................................................15

*Hirtenstein v. Cempra, Inc.*,
348 F. Supp. 3d 530 (M.D.N.C. 2018), *aff'd sub nom. Janies v. Cempra, Inc*,
816 F. App'x 747 (4th Cir. 2020) ....................................................................................25

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*,
 783 F.3d 383 (2d Cir. 2015)..................................................................................14

*In re Adolor Corp. Sec. Litig.*,
 616 F. Supp. 2d 551 (E.D. Pa. 2009) ...............................................................22, 23

*In re Aegon N.V. Sec. Litig.*,
 No. 03-cv-0603 (RWS), 2004 WL 1415973 (S.D.N.Y. June 23, 2004)..................18

*In re Aratana Therapeutics Inc. Sec. Litig.*,
 315 F. Supp. 3d 737 (S.D.N.Y. 2018)..................................................................23

*In re Avon Prods., Inc. Sec. Litig.*,
 No. 05-cv-6803 (LAK), 2009 WL 848017 (S.D.N.Y. Feb. 23, 2009), *report and recommendation adopted*, 2009 WL 10698359 (Mar. 18, 2009) .....................20

*In re Axis Cap. Holdings Ltd. Sec. Litig.*,
 456 F. Supp. 2d 576 (S.D.N.Y. 2006)..................................................................21

*In re Axonyx Sec. Litig.*,
 No. 05-cv-2307 (TPG), 2009 WL 812244 (S.D.N.Y. Mar. 27, 2009)...................24

*In re Banco Bradesco S.A. Sec. Litig.*,
 277 F. Supp. 3d 600 (S.D.N.Y. 2017)..................................................................19

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
 980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014)........16

*In re CRM Holdings, Ltd. Sec. Litig.*,
 No. 10-cv-975 (RPP), 2012 WL 1646888 (S.D.N.Y. May 10, 2012) ...............18, 24

*In re Fed Ex Corp. Sec. Litig.*,
 No. 19-cv-05990 (RA), 2021 WL 396423 (S.D.N.Y. Feb. 4, 2021) ......................23

*In re GPC Biotech AG Sec. Litig.*,
 No. 07-cv-06728 (DC), 2009 WL 5125130 (S.D.N.Y. Dec. 29, 2009)............11, 14

*In re Loral Space & Commc'ns Ltd. Sec. Litig.*,
 No. 01-cv-4388 (JGK), 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ....................22

*In re MELA Scis., Inc. Sec. Litig.*,
 No. 10-cv-8774 (VB), 2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012) ...................18

*In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*,
 No. 03-cv-8208 (RO), 2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) ....................19

*In re Neurotrope, Inc. Sec. Litig.*,
 315 F. Supp. 3d 721 (S.D.N.Y. 2018)..................................................................11

*In re ProShares Tr. Sec. Litig.*,
    728 F.3d 96 (2d Cir. 2013)......................................................................................20

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ...................................................................................15

*In re Sanofi Sec. Litig.*,
    155 F. Supp. 3d 386 (S.D.N.Y. 2016).......................................................................21

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd*, 816 F.3d 199 (2d Cir. 2016) ...............15

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993)........................................................................................10

*In re TVIX Sec. Litig.*,
    25 F. Supp. 3d 444 (S.D.N.Y.).................................................................................24

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)................................................................................................13

*Kleinman v. Elan Corp., plc*
    706 F.3d 145 (2d Cir. 2013)............................................................... *passim*

*Koncelik v. Savient Pharms., Inc.*,
    No. 08-cv-10262 (GBD), 2010 WL 3910307 (S.D.N.Y. Sept. 29, 2010), *aff'd*,
    448 F. App'x 154 (2d Cir. 2012) .............................................................................23

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
    No. 08-cv-7281 (JFK), 2011 WL 1158028 (S.D.N.Y. Mar. 30, 2011) ...................20

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
    No. 07-cv-0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008) ...................9

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005)....................................................................................20

*Lerner v. Nw. Biotherapeutics*,
    273 F. Supp. 3d 573 (D. Md. 2017) ........................................................................12

*Lin v. Metro. Life Ins. Co.*,
    No. 07-cv-03218 (RJH), 2010 WL 668817 (S.D.N.Y. Feb. 25, 2010)....................25

*Lipow v. Net1 UEPS Techs., Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015)........................................................................8

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011)..................................................................................................10

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016)..................................................................19

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006).........................................................................................8

*Nguyen v. MaxPoint Interactive, Inc.*,
    234 F. Supp. 3d 540 (S.D.N.Y. 2017)..........................................................11, 24

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
    153 F. Supp. 3d. 628 (S.D.N.Y. 2015)...............................................................8

*Rombach v. Chang*,
    355 F.3d 164 (2nd Cir. 2004).................................................................... *passim*

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010)........................18

*Rudani v. Ideanomics, Inc.*,
    No. 19-cv-6741 (GBD), 2020 WL 5770356 (S.D.N.Y. Sept. 25, 2020) .................................25

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    332 F.3d 116 (2d Cir. 2003)...........................................................................8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007).............................................................................8, 21, 24

*Tung v. Bristol-Myers Squibb Co.*,
    No. 18-cv-01611 (MKV), 2020 WL 5849220 (S.D.N.Y. Sept. 30, 2020) ...............................23

*Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*,
    No. 12-cv-5141 (JMF), 2014 WL 476348 (S.D.N.Y. Feb. 6, 2014) .......................................25

**Statutes**

15 U.S.C. § 78u-4(b)(1)(B)..............................................................................8

15 U.S.C. § 78u-4(b)(2)(A)..........................................................................8, 20

**Regulations**

21 C.F.R. § 312.21(a)...............................................................................14, 15

21 C.F.R. § 314.126...................................................................................14

Defendant NextCure, Inc. ("NextCure" or the "Company"), Officer Defendants Michael Richman, Steven P. Cobourn, and Kevin N. Heller, and Director Defendants David Kabakoff, Elaine V. Jones, Chau Q. Khuong, Judith J. Li, Briggs Morrison, Tim Shannon, Stephen Webster, and Stella Xu (collectively "Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Class Action Complaint, dated February 26, 2021 (the "Complaint") (Exhibit A),[1] filed by Lead Plaintiff Ye Zhou ("Plaintiff") alleging claims under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## PRELIMINARY STATEMENT

The plaintiff in this case, an apparent day trader, has filed suit against NextCure (a clinical-stage biopharmaceutical company focused on treating cancer) and certain of its officers for securities fraud under Section 10(b) and 20(a) of the Exchange Act.

Plaintiff's primary claim is that he was deceived by a November 5, 2020 abstract (published by a medical journal, not NextCure) that reported that, as of August 2019, anti-tumor activity had been observed in five patients in the lung cancer cohort. Plaintiff alleges this was misleading because the Abstract did not report results from the other cancer cohorts, but neither the Abstract nor NextCure claimed, or even suggested, that the results from the other cohorts were comparable. To the contrary, the Abstract stated that NextCure would release further results four days later and NextCure warned that "interim and preliminary data . . . should be viewed with caution" and "[i]nitial success in [the] ongoing clinical trial may not be indicative of results obtained" in the future.

Plaintiff further alleges that, although NextCure expressly disclosed results from these other cohorts *four days later* (and *prior* to the secondary offering at issue), this disclosure, and

---

[1] All exhibit references are to the Artaki Declaration and all references to "(¶ __)" are citations to the Complaint.

1

other similar statements made by NextCure through the first half of 2020, were deceptive because NextCure described the Phase 1 data as "encouraging" and "promising" when, Plaintiff alleges, the Phase 1 trial was not conducted with the same rigor as the FDA recommends for a Phase 2 or 3 trial. But these statements are inactionable both because they are puffery and because NextCure repeatedly stated that the data was from an open-label Phase 1 trial that, unlike a Phase 2 or 3 trial, was not optimized to measure efficacy.

Plaintiff attempts to supplement his deficient claims about the Phase 1 trial with allegations that NextCure falsely described its FIND-IO platform as "proprietary" when, according to Plaintiff, NextCure actually developed it using intellectual property from a business service provider. But Plaintiff fails to plead any specific, credible facts supporting these conclusory assertions, instead relying entirely on allegations copied from an intellectual property lawsuit brought by the provider against NextCure's Chief Executive Officer ("CEO") but voluntarily dismissed without further action months before Plaintiff filed the Complaint. Any fraud claims based on these allegations fail as a matter of law.

Plaintiff also brings claims under Sections 11 and 15 of the Securities Act against NextCure, certain officers and directors, and the underwriters of its primary and secondary public offerings based on the same facts. NextCure's initial public offering, however, preceded publication of the November 5, 2019 Abstract and its secondary offering occurred *after* NextCure released supplemental results about all cancer cohorts on November 9, 2019. Consequently, the Section 11 claims are based entirely on the exceedingly tenuous premise that NextCure deceived investors either by failing to conduct its *Phase 1 trial* in accordance with FDA guidelines for a *Phase 2 or Phase 3 trial* or by referring to its FIND-IO platform as "proprietary." Neither theory can sustain a Securities Act claim.

2

**STATEMENT OF FACTS**

A.    **NextCure, the NC318 Clinical Trial, and the FIND-IO Platform**

NextCure was founded by Dr. Lieping Chen, a Professor of Immunobiology at Yale University who discovered the protein known as PD-L1 (programmed cell death protein ligand) and found that blocking the interaction between PD-1 and PD-L1 with antibodies improved the system's ability to eliminate tumors. (¶ 34.) This technology is now widely commercialized through drugs like Merck's Keytruda and Bristol-Myers Squibb's Opdivo. (¶ 38.)

Dr. Chen also discovered the immunosuppressive properties of the Siglec-15 ("S15") protein, which has been found to interfere with the body's ability to eliminate cancerous tumors, using a platform called TCAA platform (the predecessor to NextCure's current FIND-IO platform). (¶¶ 34, 37, 46.) NC318, NextCure's lead product candidate, seeks to block S15, with the hope that doing so will restore the immune system's ability to eliminate cancerous tumors. (¶ 37.) Unlike PD-L1, no immunotherapy on the market targets S15. (¶ 38.) Moreover, because S15 and PD-L1 expression generally appear not to overlap in tumors, it is believed that NC318 might be able to improve outcomes for the 60-70% of cancer patients who fail to respond to cancer therapies targeting PD-1/PD-L1. (*Id.*)

In October 2018, NextCure began a Phase 1/2 clinical trial of NC318 (the "NC318 trial"). (¶ 40.) Phase 1 was an open label study designed to test different dose levels in order to assess NC318's safety and tolerability and define the drug's maximum tolerated dose ("MTD").[2] (¶¶ 41, 43; Ex. B (SITC Presentation) at 8.) The Phase 2 "Dose Expansion" portion was designed to place different cancer cohorts (*e.g.*, ovarian cancer) on the MTD to study, among other things, NC318's preliminary efficacy along with its safety and tolerability. (Ex. B at 8.) To ensure the

---

[2] A drug's MTD is the highest possible dose level that does not cause unacceptable side effects. *See Dictionary of Cancer Terms*, National Cancer Institute, https://www.cancer.gov/publications/dictionaries/cancer-terms/def/maximum-tolerated-dose (last visited Apr. 27, 2021).

safety of trial participants, the Phase 2 portion was formatted as a "Simon-2 Stage," which requires that Phase 2 be stopped if an insufficient number of responses are observed among a set number of initial subjects (*i.e.*, in the first stage). (¶ 51; Ex. B at 8.)

In November 2018, NextCure entered into a licensing agreement with Eli Lilly (the "Lilly Agreement") to use the FIND-IO platform to identify novel oncology targets for additional research by NextCure and Eli Lilly. (¶ 36.)

NextCure developed its FIND-IO platform by expanding and optimizing the TCAA platform used by Dr. Chen to discover the immunosuppressive properties of S15. (¶ 46.) Improvements to the platform include adding different and expanded gene libraries, adding biological pathways and reporters, expanding immune cell types, and increasing the repertoire of functional assay readouts. (*Id.*) NextCure uses the platform to "study various immune cells to discover and understand targets and structural components of immune cells and their functional impact in order to develop immunomedicines." (Ex. N (2019 10-K) at 4.)

### B.    NextCure's Initial Public Offering

On May 9, 2019, NextCure issued a prospectus for its initial public offering ("IPO Prospectus"). (¶¶ 108-11, 127-28.) The IPO Prospectus noted that trials were underway to study NC318 and that the Company "believe[s] NC318 has the ***potential*** to treat multiple cancer indications because S15 is expressed in multiple tumor types and … may be well suited to treat patients who are not responding to []PD-L1 directed cancer therapies." (Ex. E (IPO Prosp.) at 3.)

The IPO Prospectus repeatedly warned investors not to rely on preliminary results:

- "Interim and preliminary data may not be predictive of final results and should be viewed with caution until the final data are available." (*See, e.g.*, Ex. E (IPO Prosp.) at 21).)

- "Interim and preliminary results from our clinical trial that we announce or publish from time to time may change as more patient data become available and are subject to audit, validation, and verification …" and "clinical outcomes may materially change as … more patient data become available." (*Id.*).

- "Preclinical studies and early-stage clinical trials are primarily designed to test safety, to study pharmacokinetics and pharmacodynamics and to understand the side effects of product candidates at various doses and schedules, and **the results of any early-stage clinical trials may not be predictive of the results of later-stage, large-scale efficacy clinical trials**." (*Id.* at 20 (emphasis added).)

- "We have only recently initiated our first-in-human clinical trial of NC318," and "[i]nitial success in [the] ongoing clinical trial may not be indicative of results obtained when these trials are completed or in later stage trials." (*Id.*)

NextCure also warned that its final results may not be indicative of future results, stating:

- "Because the number of subjects in [the] Phase 1/2 clinical trial of NC318 is small, the results from this trial, once completed, may be less reliable than results achieved in larger clinical trials" and preliminary results of small-sample size trials may be "disproportionately influenced by the impact the treatment had on a few individuals." (*Id.* at 24.)

- "Successful completion … does not mean that NC318 … will receive regulatory approval." (*Id.* at 16; *see also id.* at 20 ("Data obtained from … clinical activities are subject to varying interpretations, which may delay, limit or prevent regulatory approval.").)

## C.    NextCure Presents Preliminary Phase 1 Results from the NC318 Trial

On November 5, 2019, in advance of the November 9, 2019 Society of ImmunoTherapy of Cancer Conference (the "2019 SITC Conference"), the Journal for ImmunoTherapy of Cancer published a four paragraph abstract (the "Abstract") authored by eight researchers (five of whom were not employed by NextCure) that reported that, as of August 2019 (the latest date on which results *could be reported* in light of the Journal's August publication deadline (*see* Ex. D (2019 SITC Deadlines) at 1-2), 43 patients had been dosed across 6 cohorts; treatment had been "well tolerated;" and tumor responses were "evaluable" in 32 patients (the other 11 had "not reached their first assessment" but would be included in the data "reported at the conference"). (¶ 48; Ex. C (Abstract) at 203.) The Abstract further stated that, within the ten patient lung cancer (NSCLC) cohort, preliminary results were available for seven patients, one of whom had had a complete response (similar to remission), one of whom had had a partial response, and three of

5

whom had remained stable (reported by the Abstract as "NSCLC BORR: 2/7 or 29%, DCR: 5/7 or 71%."). (¶ 48; Ex. E (IPO Prosp.) at 203.)

At the November 9, 2019 SITC Conference, NextCure reported supplemental Phase 1 results from 49 patients (¶ 51), including one complete response and one partial response in the lung cancer (NSCLC) cohort (the same as in the Abstract); four stable patients in the lung cancer cohort (one more than in the Abstract); and ten stable patients in the other cancer cohorts. (Ex. F (Nov. 9, 2019 PR) at 1-2.) NextCure referred to the results as "encouraging" and stated that NC318 had the "potential" to be a new therapy for patients. (¶ 50.)

### D.      NextCure's Secondary Public Offering

On November 12, 2019, three days after the 2019 SITC Conference, NextCure filed a prospectus for its secondary public offering ("SPO Prospectus") that repeated the description of NC318 and the warnings from the IPO Prospectus (¶¶ 151-54; Ex. G (SPO Prosp.) at 17, 21-22, 26) and summarized the Phase 1 "preliminary data" – "as of November 9, 2019" – presented at the conference (Ex. G at 4). It did not make any new statements alleged to be relevant here.

### E.      The 2020 Statements

On January 13, 2020, NextCure announced that Eli Lilly had notified the Company that it was terminating the Lilly Agreement. (¶ 68; Ex. H (Jan. 13, 2020 8-K) at 2.)

On January 16, 2020, at the JPMorgan Healthcare Conference, and in a press release the next day, NextCure made statements similar to those at the 2019 SITC Conference. (¶ 62.)

On February 12, 2020, non-party Immunaccel Labs, LLC ("Immunaccel") (with which NextCure previously had had a research services agreement) named defendant Richman as defendant in a Delaware state court lawsuit arising out of his position on Immunaccel's Board of Managers (¶ 69). The following day, NextCure's stock price rose by approximately 6%. (Ex. I (Stock Price Chart).) Immunaccel voluntarily dismissed the lawsuit, without payment, on June

24, 2020 – about six months before Plaintiff filed the Complaint. (Ex. J (Dismissal Notice).)

On March 12, 2020, NextCure filed a Form 10-K for 2019 that repeated NextCure's prior statements about NC318's "potential" to treat multiple cancer indications. (¶ 64.)

### F.    NextCure Presents Updated Clinical Trial Data

On May 29, 2020, NextCure presented a poster at the American Society of Clinical Oncology ("ASCO") meeting that summarized the trial's design and Phase 1 results. (¶ 70; Ex. K (ASCO Poster).) On June 1, 2020, two analysts issued reports noting that the supposed "heterogeneity of the patient population," and the lack of biopsies performed on some of the trial subjects made it "complicated to draw any conclusions." (¶¶ 70-71.) NextCure's stock price subsequently declined roughly 13%. (¶ 71.)

On July 13, 2020, NextCure released a Phase 2 "interim update" noting that, while NextCure continued to enroll other cancer cohorts, the lung cancer (NSCLC) and ovarian cancer cohorts would not advance to the second stage of the Simon 2-stage trial "at this time." (¶ 72; Ex. L (July 13, 2020 PR) at 1-2.) It also noted that a decision about whether to conduct further studies in these two cohorts depended on a "not yet complete" analysis of S15 biomarker data as a basis for patient selection. (¶ 72; Ex. L at 1.) NextCure did not indicate in any way – and the Complaint provides no basis to infer – that this determination had been made, or that the updated data precipitating it had been available, any earlier than July 2020. NextCure also announced that its Chief Medical Officer, Heller, had resigned, but would "serve as a consultant to the company." (¶ 72; Ex. L at 2.)

### ARGUMENT

### I.    PLAINTIFF MUST COMPLY WITH A HEIGHTENED PLEADING STANDARD

Congress enacted the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq*. (2006) (the "Reform Act") to stop "rampant … abuse[]" of the federal securities laws by

plaintiffs' class action lawyers. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006). The Reform Act implemented several substantive reforms including a heightened pleading standard for securities fraud claims under Rule 10b-5 of the Securities Exchange Act. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 320-21 (2007); *see also Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 332 F.3d 116, 122 (2d Cir. 2003) ("imposition of more stringent pleading requirements" was "instrumental" to Congress's efforts "to filter out potential strike suits").

The Reform Act's heightened pleading standard means that allegations sufficient to survive a conventional motion to dismiss under Rule 12(b)(6), or even a motion to dismiss under Rule 9(b), are not adequate in a securities class action. *See Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d. 628, 642 (S.D.N.Y. 2015). Instead, the plaintiff must "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B); *see also Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 157 (S.D.N.Y. 2015) (noting that Rule 9(b) also "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud"). Plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). And where (as here) "an allegation regarding [a defendant's] statement or omission is made on information and belief," plaintiff must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B).

Although the Reform Act's heightened pleading standard does not apply to the Securities Act claims pled in paragraphs 87-184 of the Complaint, Plaintiff still must satisfy Rule 9(b) with respect to those claims because the claims sound in fraud. *See Rombach v. Chang*, 355 F.3d 164, 172 (2nd Cir. 2004). A claim sounds in fraud when it uses the "wordings and imputations … classically associated with fraud," including allegations that the statements at issue are

8

"inaccurate and misleading," "materially false and misleading," or includes "untrue statements of material facts." *Id.*; *see also Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07-cv-0976 (LAP), 2008 WL 4449280, at \*11 (S.D.N.Y. Sept. 30, 2008) (allegations that defendant "had to know" of problems and "misrepresented subscriber growth" sounded in fraud); *Rombach*, 355 F.3d at 172. Here, because all of the statements supporting Plaintiff's Securities Act claims are also bases for the Exchange Act fraud claims (*compare* ¶¶ 45-79 *with* ¶¶ 129-45, 150-56), and because Plaintiff alleges that those statements are not simply "inaccurate" but also "*misleading*" (*see, e.g.*, ¶¶ 139, 152), the claims sound in fraud and must be pled under Rule 9(b).

## II.    PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT UNDER THE SECURITIES ACT OR THE EXCHANGE ACT

### A.    Plaintiff Fails to State a Claim Based on the November 5, 2019 Abstract

Plaintiff's Exchange Act claim is based primarily on allegations that investors were deceived by a four paragraph Abstract published by the Journal of ImmunoTherapy (not NextCure) on November 5, 2019 in advance of the November 9, 2019 SITC Conference. The Abstract reported that, "[a]s of *August 2019*"[3] forty-three patients had been dosed across six cohorts, thirty-two of whom had "evaluable" responses and eleven of whom had "not reached their first assessment" but would be included in the data "reported at the conference;" two patients, both in the lung cancer group, had had a "response" (one complete, one partial); and three additional lung cancer patients had remained stable while two had had disease progression. (¶ 48; Ex. C (Abstract) at 203.) Plaintiff does not dispute that two of the lung cancer patients had tumors that responded either completely or partially to treatment or that three others were "stable" as of August 2019. Instead, Plaintiff alleges that the Abstract was misleading because it did not disclose efficacy data for the remaining twenty-five evaluable patients (three of whom,

---

[3] The authors did not have the option of providing data through November because the journal's publication schedule required submission in final format by August 1, 2019. (*See* Ex. D (2019 SITC Deadlines) at 1-2.)

Plaintiff alleges, were actually in the lung cancer cohort). (*See* ¶ 49.)

The Second Circuit rejected similar allegations in *Kleinman v. Elan Corp., plc*, 706 F.3d 145 (2d Cir. 2013). The plaintiff in *Kleinman* alleged the defendant "duped" investors by issuing a press release touting "[e]ncouraging" preliminary results, including "statistically significant and clinically meaningful benefits in important subgroups" that "clinically support [the company's] decision" to advance to the next phase. *Id.* at 149. At a conference six weeks later, the company disclosed full Phase 2 results that revealed a host of alleged problems, including that the trial had failed by a "large margin," higher doses did not correlate with better results, efficacy may have been exaggerated because the control group was losing cognitive function at a higher than normal rate, the only positive data in the trial came from a curvilinear *post-hoc* analysis that identified trends not in the original modelling, and patients showed no short term improvement. *Id.* at 150, 154. Following this news, the defendant's stock price dropped by 42%.

Judge Hellerstein granted defendants' motion to dismiss and the Second Circuit affirmed. The Second Circuit explained that, even if the omitted data was "relevant or interesting to a reasonable investor," the corporation had no obligation to disclose it unless the omission rendered the press release misleading to a reasonable investor. *Kleinman*, 706 F.3d at 152 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44-45 (2011)); *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact."). The court further explained that the defendants' positive statements about the results also did not mislead because they were accompanied by a "note of caution," warning that the results were not final and would be supplemented at the conference. *See Kleinman*, 706 F.3d at 156.

Here, as in *Kleinman*, "[m]ost if not all of [plaintiff's] argument centers on omissions." *See Kleinman*, 706 F.3d at 152. Plaintiff alleges that NextCure's positive disclosures about five

patients in the lung cancer cohort gave the impression that patients from other cohorts would have similar results, but NextCure made no such assurances. To the contrary, any reasonable investor would understand the Abstract's discussion of only two responses to mean that ***there were no other responses***. *See In re Neurotrope, Inc. Sec. Litig.*, 315 F. Supp. 3d 721, 733 (S.D.N.Y. 2018) (reasonable investors would have understood statements regarding a drug's "potential" to mean that the drug "showed positive preliminary results that required further investigation"); *In re GPC Biotech AG Sec. Litig.*, No. 07-cv-06728 (DC), 2009 WL 5125130, at *6 (S.D.N.Y. Dec. 29, 2009) ("reasonable investors would have known and expected there to be 'serious obstacles' to approval of a new and experimental anti-cancer drug, and the failure of defendants to explicitly say so – assuming they did fail to say so – was not a material omission"); *see also Nguyen v. MaxPoint Interactive, Inc*., 234 F. Supp. 3d 540, 547 (S.D.N.Y. 2017) (Swain, J.) (omission not actionable where "simple arithmetic computation based on the information disclosed would have revealed" omitted information).

This is confirmed by one of the November 5, 2019 analyst reports that Plaintiff cites, which observed following release of the Abstract that "[a]mong the first 32 evaluable patients, NextCure has reported just two responses …. Two responses among 32 patients, however, is nothing to write home about." (Ex. M (Nov. 5, 2019 Motley Fool) at 2 (cited ¶ 49).) *See also Kleinman*, 706 F.3d at 154 (considering an analyst report "relied upon by [plaintiff] in his amended complaint" but which actually "contradict[ed]" plaintiff's argument).

Even if the lack of response in other patients was not clear to a reasonable investor from the Abstract itself (and it was), the Abstract still would not support a securities fraud claim because, like the press release in *Kleinman*, it included a prominent "note of caution." Specifically, the Abstract stated that it included results as of August 2019 and NextCure would release further results four days later. (Ex. C (Abstract) at 203.) NextCure also warned, both

11

before and after publication of the Abstract, that "interim and preliminary data may not be predictive of final results and should be viewed with caution until the final data are available" and that "[i]nitial success in [the] ongoing clinical trial may not be indicative of results obtained when these trials are completed or in later stage trials." (*See* ¶ 154; Ex. E (IPO Prosp.) at 20-21; Ex. N (2019 10-K) at 45-46.) Consequently, as the analyst report Plaintiff cites further noted, judgment should be withheld until November 9, when "NextCure will present results for all 43 patients who have been treated with its lead candidate." (Ex. M (Nov. 5, 2019 Motley Fool) at 2.)

Plaintiff's further allegation that the Abstract misrepresented the overall response and disease control rates for the lung cancer cohort by reporting lung cancer data for seven patients instead of ten (*see* ¶ 49) lacks the particularity required in a securities fraud case. While the Abstract does state that the ten lung cancer patients had been dosed, it also explained that, as of August 2019, "[t]umor responses were evaluable" in only 32 of the 43 patients dosed overall because "11 patients have not reached their first assessment, and their efficacy data will be reported at the conference." (Ex. C (Abstract) at 203.) Plaintiff cites no support whatsoever for his speculative assertion that the three other lung cancer patients did not fall within the group of patients who had "not reached their first assessment" as of August. *See, e.g.*, *Lerner v. Nw. Biotherapeutics*, 273 F. Supp. 3d 573, 588 (D. Md. 2017) (rejecting allegation that patient data "had just been 'cherry-picked'" because the allegation is "conclusory and does not demonstrate falsity" and the press release "expressly states it was only describing one sarcoma patient in a specific case study"); *Applestein v. Medivation, Inc.*, 561 F. App'x 598, 600 (9th Cir. 2014) (holding that "speculative conclusions" about clinical trial's parameters could "not provide an adequate basis for believing that the defendants' statements [about the trial] were false").

Nor can falsity be inferred, as Plaintiff alleges, from the increase in NextCure's stock price following the Abstract's publication or its decline nine months later when NextCure

12

announced that certain cohorts would not proceed to Phase II. (¶¶ 13, 49, 78.) NextCure revealed the information that had purportedly been omitted from the Abstract four days later, at the 2019 SITC Conference, *not* nine months later, as Plaintiff misleadingly suggests. (¶¶ 50-51; Ex. F (Nov. 9, 2019 PR).) In any event, Plaintiff's assertion that stock price can substitute for particularized allegations as the "best evidence" of fraud is nothing more than an impermissible attempt to use the securities laws to "provide investors with broad insurance against market losses." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *see also Kleinman*, 706 F.3d at 155 ("market reaction," including a 42% stock price drop, is not "a gauge for falsity").[4]

### B.    Plaintiff Fails to State a Claim Based on the Supplemental Results

Just four days after publication of the Abstract, NextCure disclosed at the 2019 SITC Conference that 16 of the 49 patients dosed as of November 9, 2019 had had a durable response, including one complete and one partial response in the lung cancer cohort; and "14 stable diseases overall (ongoing for 16 to 42 weeks)," four of which were in the lung cancer cohort. (Ex. F (Nov. 9, 2019 PR) at 1-2.) Although Plaintiff acknowledges that NextCure had accurately disclosed all available Phase 1 data, he asserts that NextCure's statements at the conference and adjoining press release, in the SPO Prospectus filed three days later on November 12, 2019, in its Form 10-K filed March 12, 2020, and at other conferences held on January 12 and May 29, 2020, were false because they used positive language (referring to the results as "encouraging," "promising," and having "potential") to describe the Phase 1 data while "omitt[ing] critical caveats" about the trial's design. (¶¶ 50-67.)

### 1.    The Statements Are Puffery

The post-November 5, 2019 statements are all inactionable because, as the Second

---

[4] Allegations based on the November 5 Abstract also should be dismissed because Plaintiff does not specifically allege that NextCure or the Officer Defendants "made" the statement at issue. *See Janus Capital Grp., Inc. v. First Derivative Traders,* 564 U.S. 135, 142 (2011) (only the "maker" of a statement – defined as the person or entity with "ultimate authority" over its content and whether to communicate it – can be liable for violation of Section 10(b)).

Circuit has explained, "words like 'encouraging'" or "promising" "are the type of "'expressions of puffery and corporate optimism' that do not generally 'give rise to securities violations.'" *Kleinman*, 706 F.3d at 153 (quoting *Rombach*, 355 F.3d at 174); *see also IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 392 (2d Cir. 2015) (the word "promising" is inactionable puffery). Plaintiff does not, and cannot, explain why these statements would be actionable here. *See GPC Biotech*, 2009 WL 5125130, at *6 (statements that gave the impression that a clinical "trial was going well" were immaterial puffery and not actionable); *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 253 (S.D.N.Y. 2019) (Swain, J.) (puffery is inactionable under Section 11). Alone, this is a sufficient basis to dismiss.

### 2. NextCure Disclosed its Phase 1 Trial Parameters

Plaintiff further alleges that NextCure's positive characterization of the supplemental results was misleading because the Phase 1 trial design did not comply with FDA guidelines set forth in 21 C.F.R. § 314.126 for an "adequate and well-controlled study." (*See* ¶¶ 53-56). The provision that Plaintiff cites, however, governs the process of applying for new drug approval based on results from a Phase 3 trial, not the guidelines applicable to a Phase 1 trial. *See Kleinman*, 706 F.3d at 148. The guidelines for a Phase 1 trial are set forth in 21 C.F.R. § 312.21(a) ("Phases of an Investigation"), which confirms that – as further set forth below – every aspect of the trial design that Plaintiff describes as "deficient" was in fact perfectly appropriate at Phase 1. Plaintiff alleges, for example, that NextCure's Phase 1 trial did not demonstrate "'substantial evidence' of effectiveness" (¶ 53) but Section 312.21(a) states that the purpose of a Phase 1 trial is to determine the safety of the drug and, "if possible, to gain *early* evidence on effectiveness." (Emphasis added.) Plaintiff similarly alleges that the trial was not "adequate and well-controlled" (¶ 53), but Section 312.21(a) states that the purpose of a Phase 1 trial is to

14

enable researchers to obtain "sufficient information" to *then design* a "well-controlled, scientifically valid, *Phase 2* stud[y]." (Emphasis added.) *See also Kleinman*, 706 F.3d at 148. Likewise, Plaintiff alleges that the trial was not reliable because it "only" enrolled 10 patients in the lung cancer group[5] (49 patients overall) (¶ 56; *see* Ex. F (Nov. 9, 2019 PR) at 1), but Section 312.21(a) states that the "total number of subjects and patients included … is generally in the range of 20 to 80." And Plaintiff alleges that researchers did not limit enrollment to "patients with the disease of interest" (¶ 53), but Section 312.21(a) states that a Phase 1 trial may "be conducted in patients or normal volunteer subjects."

In any event, investors could not have been deceived by the alleged "deficiencies" in the trial design because NextCure expressly disclosed them. *See Kleinman*, 706 F.3d at 154-55 ("[o]ur job is not to evaluate the use of" disfavored scientific methods, such as use of a *post hoc* analysis, so long as those methods are disclosed); *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 411 (S.D.N.Y. 2018); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 540 (S.D.N.Y. 2015) (dismissing where medical journals disclosed allegedly inferior trial design), *aff'd*, 816 F.3d 199 (2d Cir. 2016); *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 878-79 (9th Cir. 2012) ("merely alleging that defendants should have used different statistical methodology in their drug trials is not sufficient to allege falsity"). Plaintiff acknowledges that NextCure disclosed that: (1) the primary objectives in Phase 1 were safety and collecting information for Phase 2, and that it had "not optimiz[ed] the Phase 1 component to look for efficacy" (¶¶ 43, 51); (2) as of August 2019, "43 patients … had been dosed across 6 cohorts" including "10 [lung cancer]" patients (¶ 8); (3) Phase 1 was "open-label" / not "double-blinded" (¶¶ 6, 41-42); (4) in Phase 1, "to enroll quickly . . . we didn't very often get biopsies" before starting treatment and enrolled "all comer[s] … independent [of] PD-L1 or Siglec-15 status," and even in Phase 2, the

---

[5] In actuality, 13 lung cancer patients were enrolled. (*See* Ex. F (Nov. 9, 2019 PR) at 2.)

trial used lower PD-L1 TPS scores to "softly enrich for patients with Siglec-15" instead of biopsying for S15 (¶ 51);[6] (5) it did not exclude patients who had received other cancer treatment (*e.g.*, ¶ 62); and (6) the trial measured "tumor response," not "overall survival rate" (¶ 48). In light of these robust, and concededly accurate, disclosures, Plaintiff simply cannot identify any material omission or misstatement among NextCure's positive comments about the trial. *See In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 577 (S.D.N.Y. 2013) ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed."), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).

Plaintiff's allegations that NextCure deceived investors by stating that "data from the trial indicate[s] activity in multiple tumor types" and that there were "durable responses" (*see* ¶¶ 60, 151) are flawed for the same reason. Even if Plaintiff had some basis for alleging that a 49 week complete response, 24 week partial response, and "16 to 42 weeks" of stable responses were too short to be "durable" (he pleads none), NextCure disclosed the duration of these responses in its public filings. (*See* ¶ 60 (disclosing duration of the complete and partial responses); Ex. F (Nov. 9, 2019 PR) at 2 (disclosing "durable stable disease in patients with NSCLC, endometrial cell cancer, ovarian cancer, squamous cell carcinoma, Merkel cell cancer and head and neck cancer (ongoing for 16 to 55 weeks as of November 9, 2019)").)[7]

### 3. Many of the Alleged Misstatements Are Manufactured for Litigation or Misattributed to Defendants

The remaining "false statements" alleged in the Complaint were either never made at all or made by non-parties unrelated to Defendants.

---

[6] These same statements (*see also* Ex. B (SITC Presentation) at 17-18) refute the allegation that NextCure first disclosed at the May 29, 2020 ASCO Meeting that most patients, including its "complete response" and "partial response" patients, had not been biopsied for S15. (*See* ¶¶ 70-71.) NextCure also disclosed the same demographic information that it later included in the May 29 poster. (*Compare* Ex. B at 10 *with* Ex. K (ASCO Poster) at Table 1.)

[7] Any suggestion that NextCure had undisclosed, concrete data that undercut the reported efficacy results in real time (*see, e.g.*, ¶¶ 152-53) is nonsense: despite Plaintiff's efforts to muddle the progression of events, NextCure disclosed the "concealed data" at the 2019 SITC Conference and in the SPO Prospectus.

Some of the statements are outright fabrications. For example, Plaintiff alleges that, in either a press release or Form 10-K filed March 12, 2020 (he does not identify which), NextCure claimed that NC318 was "'well suited' to treat patients who are not responding to Pd-1/PD-L1 directed cancer therapies, based on the 'positive' data from the Phase 1 trial, which 'indicate[d] activity in multiple tumor types.'" (¶¶ 64-65.) Plaintiff appears to have invented this "misstatement" by adding clauses from three different paragraphs (one of them a risk disclosure that appears forty pages after the other two) in NextCure's Form 10-K. (*See* Ex. N (2019 10-K) at 5 (statement, made without reference to NextCure's Phase 1 results, that NC318 "may be well suited" to treat patients who are not responding to PD-L1 cancer), *id.* at 45 (risk disclosure that "positive results" from pre-clinical or early-stage trials may not be indicative of future results), *id.* at 4 (statement that Phase 1 trial "indicate[d] activity in multiple tumor types").)

Similarly, Plaintiff alleges that on November 9, 2019 NextCure stated that the Phase 1 "data 'very strongly' 'suggests' efficacy." (¶ 52.) In fact, what NextCure actually said was that it had designed its Phase 2 trial to exclude patients with higher PD-L1 levels because "we have some preliminary data that suggests very strongly that [S15] is active among patients who have PD-1 refractory [resistant] non-small cell lung cancer." (¶ 51.) This was a statement about a possible inverse relationship between S15 (the protein NC318 is designed to block) and PD-L1 (not efficacy), based on preliminary research in mice (not NextCure's Phase 1 results). (*See* Ex. E (IPO Prosp.) at 91-92.)

Plaintiff similarly highlights a May 29, 2020 statement that NC318 "has ***the potential*** to address multiple big indications," and "could ***generate up to $2.1B*** in peak risk-adjusted revenues." (¶ 67 (emphasis in original).) But this statement was made by one of NextCure's analysts – *not* NextCure itself or any other Defendant. (*Id.*) Plaintiff alleges that the analyst

17

"adopted" this statement from NextCure, but cites no basis for this conclusory assertion.[8] *See In re MELA Scis., Inc. Sec. Litig.*, No. 10-cv-8774 (VB), 2012 WL 4466604, at *12 n.5 (S.D.N.Y. Sept. 19, 2012) (holding analyst's prediction of FDA drug approval timing was "not attributable to defendants"); *In re Aegon N.V. Sec. Litig.*, No. 03-cv-0603 (RWS), 2004 WL 1415973, at *15 (S.D.N.Y. June 23, 2004) (rejecting claim premised on analyst statements on separate grounds that "the statements (1) are not properly attributable to the Defendants; (2) fail to satisfy the particularity requirements of Rule 9(b); and (3) are inactionable expressions of optimism"). None of these statements, therefore, can be used to support Plaintiff's claim.

### C.     Plaintiff Fails to State a Claim Based on Defendants' FIND-IO Disclosures

Plaintiff also alleges that NextCure misled investors by referring to its FIND-IO data analysis platform as "unique," "novel," and "proprietary" in connection with its IPO and SPO when, Plaintiff alleges, NextCure actually misappropriated the intellectual property used to create the platform from its former service provider Immunaccel. (*See, e.g.*, ¶¶ 45-47.)[9]

Plaintiff bases these allegations entirely on unproven allegations from a complaint filed, and then voluntarily dismissed, by Immunaccel. (*See* ¶ 69.) It is well settled, however, that "unproven allegations" made by litigants in a separate proceeding "do not constitute factual allegations" sufficient to support a claim under Section 10(b) or Section 11.[10] *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10-cv-975 (RPP), 2012 WL 1646888, at *26 (S.D.N.Y. May 10,

---

[8] The analyst report Plaintiff cites – which was issued by JMP Securities, *not* JPMorgan as Plaintiff alleges – states that the predictions belonged to the analyst, and not NextCure. (*See* Ex. O (JMP Securities) at 1 ("***we believe*** … NC-318 has the potential to address …"; "***we estimate*** NC-318 could generate up to \$2.1B…" (emphasis added)).)

[9] This is the only alleged misstatement in the IPO Prospectus (the IPO predated publication of the Abstract and NextCure's release of preliminary Phase 1 results).

[10] "Second Circuit case law is clear that paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law, immaterial within the meaning of Fed.R.Civ.P. 12(f)." *In re CRM Holdings, Ltd. Sec. Litig.*, No. 10-cv-975 (RPP), 2012 WL 1646888, at *26 (S.D.N.Y. May 10, 2012) (citation omitted). The Court should thus disregard the Complaint paragraphs regarding the Immunaccel lawsuit. *See RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), *aff'd*, 387 F. App'x 72 (2d Cir. 2010).

2012) (dismissing Section 10(b) claim); *see In re Morgan Stanley & Van Kampen Mut. Fund Sec. Litig.*, No. 03-cv-8208 (RO), 2006 WL 1008138, at *5 (S.D.N.Y. Apr. 18, 2006) (dismissing section 11 claim based on unproven assertions in settlement agreement with SEC).[11]

Even if the Court were to consider Plaintiff's recycled "misappropriation" allegations (which it should not), they would not support a securities claim. It is well-settled that companies do not "have a duty to disclose uncharged, unadjudicated wrongdoing." *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 651 (S.D.N.Y. 2017) (citation omitted). And when securities claims do seek to "rest[] on the failure to disclose uncharged illegal conduct, the complaint must at a minimum "state a plausible claim that the underlying conduct occurred." *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 578 (S.D.N.Y. 2016). Parroting allegations from another (now dismissed) lawsuit does not qualify.

Insofar as Plaintiff takes issue with the IPO Prospectus's risk-factor disclosures for framing as future hypotheticals the possibility that Defendants could, for example, one day face claims of trade-secret misappropriation when in fact that was already coming to pass (¶¶ 140-45), the Complaint alleges no facts to suggest that the eventual Immunaccel lawsuit, which post-dated the IPO and SPO (¶ 69), was known or knowable at the time of NextCure's statements. This is impermissible fraud-by-hindsight pleading.[12] *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) ("We do not recognize allegations of 'fraud by hindsight.'"). If anything, the risk-factors disclosures (*see* Ex. E (IPO

---

[11] Plaintiff also alleges that NextCure failed to disclose its CEO's "affiliation with a direct competitor, Immunaccel" (¶ 130) but fails to cite any support for this and, indeed, even acknowledges elsewhere in the Complaint that NextCure was an Immunaccel "customer" (not a competitor) (¶ 47). In any event, Plaintiff fails both to identify any affirmative statements rendered false or misleading by the purported nondisclosure – NextCure never denied that its CEO held such a role – and to cite any specific facts supporting it.

[12] Similarly, to the extent Plaintiff claims that NextCure's IPO Prospectus's warning that "risks related to [the] FIND-IO platform" may prevent NextCure from "meet[ing] [its] obligations under the Lilly Agreement" (¶ 141) was rendered false by the eventual termination of that agreement – on January 20, 2020, over eight months later (*see* ¶ 68) – that would also be impermissible fraud-by-hindsight pleading. In any event, Plaintiff makes no allegation even suggesting that the Lilly Agreement's termination had anything to do with the supposed misappropriation.

Prosp.) at 44-47) are fatal to Plaintiff's claim, as they alerted investors to the precise risk – trade secret misappropriation claims against NextCure employees – that later materialized. *See In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102 (2d Cir. 2013) ("when a registration statement warns of the exact risk that later materialized, a section 11 claim will not lie as a matter of law").

Plaintiff also does not and cannot plead loss causation as to the Immunaccel allegations. To plead an actionable claim under the Exchange Act, "a plaintiff must allege ... that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (citation and quotations omitted); *see also In re Avon Prods., Inc. Sec. Litig.*, No. 05-cv-6803 (LAK), 2009 WL 848017, at *27-28 (S.D.N.Y. Feb. 23, 2009) (holding that plaintiff failed to plead loss causation because the misconduct-revealing lawsuit and subsequent publicity "did not cause a share-price drop"), *report and recommendation adopted*, 2009 WL 10698359 (Mar. 18, 2009). Plaintiff here, however, fails to allege that NextCure's stock price declined following publication of the Immunaccel complaint. (*See* Ex. I (Stock Price Chart) (showing the stock price *increased*).) This is a separate and independent basis for dismissal.

## III.   PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiff's Section 10(b) claims should be dismissed on the separate ground that the Complaint alleges no facts establishing the requisite "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). To plead scienter, the plaintiff must allege particularized facts demonstrating: "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). When plaintiff alleges that an opinion is false, he may proceed only "upon a showing that the defendants did not genuinely or reasonably believe the [] opinions they touted." *Kuriakose v. Fed. Home Loan Mortg. Corp.*,

No. 08-cv-7281 (JFK), 2011 WL 1158028, at *11 (S.D.N.Y. Mar. 30, 2011) (citation omitted).

In any event, the inference of fraud "must be more than merely 'reasonable' or 'permissible' – it

must be cogent and ... at least as compelling as any opposing inference" of non-fraudulent intent.

*Tellabs*, 551 U.S. at 324. Plaintiff does not meet these standards.

### A.      Plaintiff Fails to Plead Motive

Plaintiff does not allege that Defendants had a motive to commit fraud. In fact, Plaintiff

admits that NextCure disclosed the supplemental Phase 1 results ***three days before*** its secondary

offering. *See, e.g.*, *In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 596 (S.D.N.Y.

2006) (no motive where plaintiff showed "no 'suspicious' or 'unusual' relationship between the

timing of the Secondary Offering and any allegedly false statements or negative revelations");

*see also Rombach*, 355 F.3d at 177 ("Action taken to maintain the appearance of corporate

profitability … does not entail concrete benefits sufficient to demonstrate motive." (citation and

quotations omitted)). Moreover, Plaintiff does not allege, as he must, that any individual

defendant sold stock during the putative Class Period, or otherwise financially gained from the

alleged misrepresentations. (*See generally* Compl.) Without such allegations, Plaintiff cannot

plead motive. *See, e.g.*, *Dempsey v. Vieau*, 130 F. Supp. 3d 809, 816 (S.D.N.Y. 2015) (Swain, J.)

(no motive where defendants made no "unusual or suspicious" stock sales).

### B.      Plaintiff Fails to Plead That Defendants Did Not Reasonably Believe their Statements

In the absence of motive, "the strength of [Plaintiff's] circumstantial allegations must be

correspondingly greater." *ECA Local 134*, 553 F.3d at 199 (citation omitted); *see also In re*

*Sanofi Sec. Litig.*, 155 F. Supp. 3d 386, 409 (S.D.N.Y. 2016) (with no alleged "motive to

orchestrate a fraudulent scheme … the circumstantial evidence that [defendants] were

deliberately engaging in a fraudulent scheme must be greater."). Here, Plaintiff's are not.

### 1.     Plaintiff Fails to Plead Scienter Regarding the Phase 1 Trial Results

Plaintiff does not, and cannot, allege that Defendants disbelieved any statement concerning the preliminary trial results. To the contrary, Defendants' statements were completely accurate and directly supported by the trial results then available to NextCure. (*See supra*, § II(A).) On this basis alone, any claim that Defendants did not genuinely or reasonably believe their statements must be rejected. *See, e.g.*, *Fort Worth Emp'rs Ret. Fund v. Biovail Corp.*, 615 F. Supp. 2d 218, 226-27 (S.D.N.Y. 2009) (no scienter where "[t]he only fair inference … is that Defendants reasonably believed that their [FDA] application was supported by sufficient and acceptable data"); *In re Adolor Corp. Sec. Litig.*, 616 F. Supp. 2d 551, 575 (E.D. Pa. 2009) (no scienter where "Defendants' public disclosures accurately described the results of each study").

Further, NextCure fully disclosed the Phase 1 trial parameters and results to date as soon as the Company was able to publish them. (*See supra*, §§ II(A)-(B)(2).) This "effectively refutes plaintiffs' claim" of fraudulent intent. *See, e.g.*, *Avon Pension Fund v. GlaxoSmithKline PLC*, 343 F. App'x 671, 674 (2d Cir. 2009) (disclosure of adverse trial results on website); *UBS*, 752 F.3d at 186 ("specific disclosures" about risky practices "undercut the inference that defendants … intended to conceal" them). The same is true for NextCure's repeated warnings to investors, both before and during the alleged class period, that the disclosed results were preliminary and should be viewed with caution. (*See supra*, at SOF § B; § II(A).) *See also, e.g.*, *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.*, 632 F.3d 751, 760 (1st Cir. 2011) ("warnings of risks generally weaken the inference of scienter" (citation omitted)); *In re Loral Space & Commc'ns Ltd. Sec. Litig.*, No. 01-cv-4388 (JGK), 2004 WL 376442, at *14 (S.D.N.Y. Feb. 27, 2004) (plaintiff's allegations did "not give rise to an inference of conscious misbehavior or recklessness" in light of "consistent [risk] disclosures by the defendants").

Finally, Plaintiff pleads no particularized allegations even suggesting Defendants'

22

awareness that the statements were false. Indeed, the Complaint – which cites no confidential witnesses or internal documents – does not allege a single non-conclusory fact about any individual defendant's knowledge. (*See generally* Compl.) *See also, e.g.*, *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018) (no scienter where the complaint "does not cite any internal documents or confidential witness statements" and "lacks any concrete allegations whatsoever regarding defendants' knowledge, apart from the information defendants themselves disclosed"). At most, Plaintiff alleges only that the Executive Defendants occupied senior roles at NextCure and that Heller "oversaw" (*see* ¶ 27) and Richman was "involved in" (*see* ¶ 131) the trial.  This is plainly insufficient. *See, e.g.*, *In re Fed Ex Corp. Sec. Litig.*, No. 19-cv-05990 (RA), 2021 WL 396423, at *15 (S.D.N.Y. Feb. 4, 2021) ("conclusory allegations" that defendants had knowledge "[b]ecause of their positions within [company]" were "too speculative to raise an inference" of scienter); *Adolor*, 616 F. Supp. 2d at 573 (rejecting "claim that Defendants must have learned of [study research] from their scientists and researchers because of Defendants' positions").[13]

Taken together, the lack of any alleged motive, NextCure's complete disclosure of NC318 trial results, and the total absence of particularized allegations that Defendants were aware of any data undermining their statements weigh decisively against scienter. *See, e.g.*, *Koncelik v. Savient Pharms., Inc.*, No. 08-cv-10262 (GBD), 2010 WL 3910307, at *8 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 448 F. App'x 154 (2d Cir. 2012) (allegations that company omitted negative outcomes from trial results insufficient for scienter because company "could not be held to have known" those outcomes undermined statements). By far the more cogent and compelling

---

[13] Heller's departure (*see* ¶ 73) does not give rise to a strong inference of scienter because it was "in the normal course of business." *Tung v. Bristol-Myers Squibb Co.*, No. 18-cv-01611 (MKV), 2020 WL 5849220, at *5 (S.D.N.Y. Sept. 30, 2020); *see Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 605 (S.D.N.Y. 2016) ("an officer's resignation, without more, is insufficient to support a strong inference of scienter.").

inference is that, for all of the foregoing reasons, Defendants simply reported the NC318 trial results as they had them. *See, e.g.*, *In re Axonyx Sec. Litig.*, No. 05-cv-2307 (TPG), 2009 WL 812244, at *3-4 (S.D.N.Y. Mar. 27, 2009) (even where drug ultimately ineffective, most compelling inference was company "did its best to … carry out a successful clinical trial").

### 2.    Plaintiff Fails to Plead Scienter Regarding FIND-IO

The Complaint also fails to allege that Defendants disbelieved any statements about NextCure's FIND-IO platform. Plaintiff's FIND-IO allegations rest entirely on Immunaccel's voluntarily-dismissed lawsuit against Richman (*see* ¶ 69) which legally cannot support a strong inference of scienter. *See, e.g.*, *CRM Holdings*, 2012 WL 1646888, at *26 ("Plaintiffs' citation to 'unproven allegations' made in [two separate] complaints" could not support scienter).

## IV.    PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED

The Section 11 claim should be dismissed because, in addition to other reasons discussed above, it is based entirely on: (1) FIND-IO allegations copied from the post-SPO Immunaccel complaint; and (2) information, including the length of the "durable responses" and the number of complete responses, partial responses, and stable patients in the lung cancer cohort, which Plaintiff acknowledges NextCure disclosed. *See MaxPoint*, 234 F. Supp. 3d at 547 (dismissing Section 11 claim where defendants disclosed allegedly omitted information). The Section 20(a) and Section 15 claims should be dismissed based on Plaintiff's failure and inability to plead an underlying Section 10(b) and Section 11 violation, respectively. *See, e.g.*, *Rombach*, 355 F.3d at 177-78; *In re TVIX Sec. Litig.*, 25 F. Supp. 3d 444, 458 (S.D.N.Y.) (Swain, J.).

## V.    CONSIDERATION OF THE ARTAKI EXHIBITS IS PROPER

The Supreme Court has held that, when ruling on a motion to dismiss, "courts must consider … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 310. Here, consideration of NextCure's SEC

filings and press releases (Exs. E, F, G, H, L, and N), analyst reports (Exs. M, O), and scientific publications (Exs. B, C, K) is proper because they are incorporated by reference in the Complaint[14] *and* judicially noticeable as publicly available documents from sources of undisputed authenticity. *See, e.g.*, *Rudani v. Ideanomics, Inc.*, No. 19-cv-6741 (GBD), 2020 WL 5770356, at *1 n.1 (S.D.N.Y. Sept. 25, 2020) (SEC filings and press releases); *Born v. Quad/Graphics, Inc.*, No. 19-cv-10376 (VEC), 2021 WL 736839, at *9 n.11 (S.D.N.Y. Feb. 25, 2021) (analyst reports); *Hirtenstein v. Cempra, Inc.*, 348 F. Supp. 3d 530, 550 (M.D.N.C. 2018) (articles and slides describing trial results), *aff'd sub nom. Janies v. Cempra, Inc.*, 816 F. App'x 747 (4th Cir. 2020); *Lin v. Metro. Life Ins. Co.*, No. 07-cv-03218 (RJH), 2010 WL 668817, at *2, 5 (S.D.N.Y. Feb. 25, 2010) (scientific article providing background on relevant medical topic). Consideration of NextCure's stock price chart (Ex. I), Immunaccel's notice of dismissal (Ex. J), and the 2019 SITC webpage (Ex. D) is likewise proper because they are judicially noticeable. *See, e.g.*, *Barilli*, 389 F. Supp. 3d at 248 n.11 (stock prices); *Weisman Celler Spett & Modlin, P.C. v. Trans-Lux Corp.*, No. 12-cv-5141 (JMF), 2014 WL 476348, at *2 (S.D.N.Y. Feb. 6, 2014) (court filings); *Fernandez v. Zoni Language Centers, Inc.*, No. 15-cv-6066 (PKC), 2016 WL 2903274, at *3 (websites).

**CONCLUSION**

For all of the foregoing reasons, and because Plaintiff cannot identify any facts that would make this a viable claim, the Complaint should be dismissed without leave to amend.

---

[14] The Complaint cites the SEC filings and press releases (¶¶ 10, 50, 64, 68, 72, 75, 127-31, 133-45, 148-156, 159, 160), analyst reports (¶¶ 49, 67), and scientific documents disclosing trial results (¶¶ 8-11, 48-49, 51, 54, 60, 66, 70).

Dated: April 27, 2021

KATTEN MUCHIN ROSENMAN LLP

By:    /s/ Bruce G. Vanyo
      Bruce G. Vanyo
      Thomas M. Artaki
      575 Madison Avenue
      New York, New York 10022
      Telephone:  (212) 940-8800

      Christina L. Costley
      2029 Century Park East, Suite 2600
      Los Angeles, California 90067
      Telephone: (310) 788-4400

*Attorneys for Defendants NextCure, Inc.,*
*Michael Richman, Steven. P. Cobourn,*
*Kevin. N. Heller, David Kabakoff,*
*Elaine V. Jones, Chau Q. Khuong,*
*Judith J. Li, Briggs Morrison, Tim Shannon,*
*Stephen Webster, and Stella Xu*